IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No.: 5:23-CV-00179

| | | |
|---|---|---|
| ALANA MARIE SOUZA a/k/a ALANA CAMPOS, ANDRA "ANA" CHERI MORELAND, CIELO JEAN "CJ" GIBSON, CLAUDIA SAMPEDRO, DENISE TRLICA a/k/a DENISE MILANI, LUCY PINDER, DESSIE MITCHESON, EVA PEPAJ, JESSICA BURCIAGA, JESSICA "JESSA" HINTON, JESSICA "CHARM" KILLINGS, LEANNA DECKER, LINA POSADA, MARIANA DAVALOS, MASHA LUND, MONICA LEIGH BURKHARDT, PAOLA CAÑAS, RHIAN SUGDEN, SANDRA VALENCIA, TIFFANY GRAY a/k/a TIFFANY TOTH, TYRAN RICHARDS, and VIDA GUERRA | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | **COMPLAINT** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CD OF CATAWBA COUNTY, LLC d/b/a LA RUMBA DE CACHE and ALFANSO GIOVANNY MEMBRENO, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs Alana Marie Souza a/k/a Alana Campos, Andra Cheri Moreland a/k/a Ana Cheri,

Cielo Jean "CJ" Gibson, Claudia Sampedro, Denise Trlica a/k/a Denise Milani, Lucy Pinder,

Dessie Mitcheson, Eva Pepaj, Jessica Burciaga, Jessica "Jessa" Hinton, Jessica "Charm" Killings,

Leanna Decker, Lina Posada, Mariana Davalos, Masha Lund, Monica Leigh Burkhardt, Paola

Cañas, Rhian Sugden, Sandra Valencia, Tiffany Gray a/k/a Tiffany Toth, Tyran Richards, and

Vida Guerra (collectively, "Plaintiffs"), file this Complaint against CD of Catawba County, LLC

- 1 -

d/b/a La Rumba de Cache and Alfonso Giovanny Membreno, (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.    This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of Images of Plaintiffs, each of whom are well-known professional models, to promote their night club, La Rumba de Cache located in Hickory, North Carolina ("La Rumba" or the "Club").

2.    As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' Images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiffs' common law right of privacy - misappropriation; c) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; and d) various common law torts, including conversion.

3.    In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.    This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.    Plaintiffs are, and at all times relevant to this action have been, professional models

- 2 -

who reside throughout the United States.

7.      According to publicly available records, defendant CD of Catawba County, LLC operating under the laws of the state of North Carolina, operates La Rumba de Cache, which is located at 534 U.S. Hwy 70 SW, Hickory, NC 28602.

8.      According to publicly available records, defendant Alfonso Giovanny Membreno is a Managing Member of CD of Catawba County, LLC.

9.      Venue is proper in the United States District Court for the Western District of North Carolina because Defendants' principal place of business in Hickory, North Carolina.

10.      A significant portion of the alleged causes of action arose and accrued in Hickory, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Hickory, North Carolina.

## PARTIES

### *Plaintiffs*

11.      Plaintiff Alana Marie Souza a/k/a Alana Campos ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

12.      Plaintiff Andra "Ana" Cheri Moreland ("Cheri") is a well-known professional model, and a resident of Orange County, California.

13.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

14.      Plaintiff Jennifer Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

15.      Plaintiff Denise Trlica a/k/a Denise Milani ("Trlica") is a well-known professional model, and a resident of Los Angeles, California.

- 3 -

16.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of Winchester, England.

17.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

18.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

19.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

20.     Plaintiff Jessica "Jessa" Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, Georgia.

21.     Plaintiff Jessica "Charms" Killings ("Killings") is a well-known professional model, and a resident of Los Angeles County, California.

22.     Plaintiff Leanna Decker ("Decker") is a well-known professional model, and a resident of Clark County, Nevada.

23.     Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

24.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

25.     Plaintiff Masha Lund ("Lund") is a well-known professional model, and a resident of New York County, New York.

26.     Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

27.     Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident

of Broward County, Florida.

28. Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of Prestwich, England.

29. Plaintiff Sandra Valencia ("Valencia") is a well-known professional model, and a resident of Medellin, Colombia.

30. Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Toth") is a well-known professional model, and a resident of Orange County, California.

31. Plaintiff Tyran Richards ("Richards") is a well-known professional model, and a resident of Livingston Parish County, Louisiana.

32. Plaintiff Vida Guerra ("Guerra") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

33. Defendant CD of Catawba County, LLC is a limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina. At all times relevant to this action, CD of Catawba County, LLC operated La Rumba in Hickory, North Carolina.

34. Service of process may be perfected upon Defendant CD of Catawba County, LLC by serving the registered agent for service of process, Alfonso Geovanny Membreno, at 534 Hwy 70 SW suite 101, Hickory, North Carolina 28602-3256.

35. Defendant Alfonso Giovanny Membreno is the Manager of CD of Catawba County who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

36. Service of process may be perfected upon Alfonso Giovanny Membreno by serving

- 5 -

him at 1636 6th Street SE, Hickory, North Carolina 28602.

## FACTUAL ALLEGATIONS

37.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

38.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

39.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

40.     In the case of each Plaintiff, this apparent claim was false.

41.     Moreover, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization.

42.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

43.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

- 6 -

44.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

45.     As of the date of this Complaint, Defendants' use of Plaintiffs' images is ongoing and Defendants thus continue to reap the benefit of their alleged association with Plaintiffs, which is of course, false.

***Plaintiffs' Individual Backgrounds and Careers***

46.     Plaintiff Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

47.     That we know of, Campos is depicted in the photos in Exhibit "A" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Campos was either an employee working at Campos, that she endorsed Campos, or that she was otherwise associated or affiliated with Campos.

48.     Campos has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

- 7 -

49.     Plaintiff Cheri is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a *Maxim* Instagram Girl of the Week, and was also *Playboy's* October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Cheri Fit activewear. Cheri currently has over 12.5 million followers on Instagram, over 15.5 thousand followers on Twitter, and over 6.2 million followers on Facebook.

50.     That we know of, Cheri is depicted in the photos in Exhibit "B" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Cheri was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

51.     Cheri has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

52.     Plaintiff Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness

- 8 -

equipment and is in the process of developing her own line of supplements and fitness clothing.

53.     That we know of, Gibson is depicted in the photos in Exhibit "C" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Gibson was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

54.     Gibson has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

55.     Plaintiff Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter.

56.     That we know of, Sampedro is depicted in the photo in Exhibit "D" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Sampedro was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

57.     Sampedro has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58.     Plaintiff Trlica is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired woman in the world by *Askmen Magazine*. In 2011, she was ranked in the 5th position in championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 660 thousand followers on Instagram, 6.3 million Facebook likes, and over 126 thousand followers on Twitter.

59.     That we know of, Trlica is depicted in the photos in Exhibit "E" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Trlica was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

60.     Trlica has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

61.     Plaintiff Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as *FHM, Nuts, Loaded, The Daily Star,* and hundreds of others. Pinder

- 10 -

has appeared on *FHM's* list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in *Nuts*, entitled "The Truth About Women" and appeared on the final edition of the *Nuts* magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and Film credits. She has appeared on shows such as *I'm Famous and Frightened*, *Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon,* and *Team and Bo!* in the USA. Pinder was also a contestant on *Celebrity Big Brother*. Pinder starred in films such as *The Seventeenth Kind, Age of Kill,* and *Warrior Savitri*. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with *Help for Heroes* appearing in the *Hots Shots* fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars year after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and Twitter.

62.    That we know of, Pinder is depicted in the photos in Exhibit "F" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Pinder was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

63.    Pinder has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue

to suffer, damages as a result of same.

64.     Plaintiff Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

65.     That we know of, Mitcheson is depicted in the photos in Exhibit "G" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Mitcheson was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

66.     Mitcheson has never been employed at La Rumba, has never been hired to endorse Mitcheson, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67.     Plaintiff Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and

film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She has 311 thousand followers on Instagram.

68.     That we know of, Pepaj is depicted in the photos in Exhibit "H" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

69.     Pepaj has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

70.     Plaintiff Burciaga is a model and a business owner. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. She has various business ventures, including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.5 million followers on Instagram, over 3.4 million Facebook followers, and over 174.7 thousand

followers on Twitter.

71.     That we know of, Burciaga is depicted in the photos in Exhibit "I" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Burciaga was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

72.     Burciaga has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

73.     Plaintiff Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media*

and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

74. That we know of, Hinton is depicted in the photos in Exhibit "J" to promote La Rumba on its Facebook page. These Images were intentionally altered to make it appear that Hinton was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

75. Hinton has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

76. Plaintiff Killings is a model and music video star. She has appeared in a number of popular magazines such as *SHOW, Blackmen, Straight Stuntin, Smooth,* and *Mixed*. Killings has also appeared in several music videos as the lead talent including Far East Movement ft. Snoop Dogg's video "OMG," Slim Thug and Baby Bash's video "Swananana," Big Sean and Chris Brown's video "My Last," Bow Wow's video "Pretty Lady," and Jay Sean ft. Nicki Minaj's video "2012." Killings has 1.9 million Instagram followers and 53.1 thousand Twitter followers.

77. That we know of, Killings is depicted in the photos in Exhibit "K" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Killings was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

78. Killings has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

79.     Plaintiff Decker is an American model, Playmate and actress. Decker started modeling by taking the initiative herself, hiring a local photographer and creating an account on Model Mayhem. Decker was embraced by the model world quickly and has now worked for many magazines, catalogues, online companies and calendars. Some of Deckers clients include, Magic Silk Lingerie catalogue, *Kandy Magazine* cover and feature story, 2015 Toyo Tires Girl, Cover of Teeny B Calendar, *Next Level Magazine* cover and feature and Twice US *Maxim's* feature girl with accompanying interview. Decker shot for *Playboy* and become 2012 Cyber girl of the year. Decker then went on to shoot for *Playboy US* and was twice feature stories, *Playboy Croatia* cover Feb 2014 and again graced the cover on Feb 2015. Decker was also featured as *Playboy* Cover and centerfold in Russia and also for *Playboy South Africa.*

80.     That we know of, Decker is depicted in the photos in Exhibit "L" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Decker was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

81.     Decker has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

82.     Plaintiff Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She

currently has 99.5 thousand Instagram followers, 3.63 thousand YouTube subscribers, 9.1 thousand Facebook followers, and over 5.4 thousand Twitter followers.

83. That we know of, Posada is depicted in the photos in Exhibit "M" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Posada was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

84. Posada has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

85. Plaintiff Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

86. That we know of, Davalos is depicted in the photos in Exhibit "N" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Davalos was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

87.     Davalos has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

88.     Plaintiff Lund is a famous Danish/Russian model, actress, and designer. Lund started modeling when she was a baby in TV commercials for baby food. After finishing business college, she was sponsored in the United States to model. She modeled in major ads for Rockstar Energy Drinks billboards that were displayed in 20 cities throughout the U.S. Lund has graced the covers of FHM, Maxim, Ralph, and People Magazine  and been published in *GQ, Mens Health, Esquire, Sports Illustrated* and celebrity spread for *Playboy* magazine and was named one of the "Sexiest Women in the World" by FHM. She  has had roles  in The Pick of Destiny  with Jack Black and Tenacious D, and Epic Movie with Carmen Electra. Lund was featured in music videos for Eminem, Lady Gaga, and many other big names. She also was a spokesmodel for several brands including, Dreamgirl Lingerie clothing company for eight years, and was featured on more billboards for 138 Water Company on Sunset Drive in Los Angeles and for Nialaya on Robertson Blvd. in LA. In 2010, she starred in a popular Danish reality TV show about career women from Denmark "living the dream" in Los Angeles, called Danske Hollywood Fruer. Lund has studied fashion, art and interior design as well as working on her own pet clothing line HollywoodPetCouture. Lund is also an interior decorator, blogger, and endorser for several beauty companies.

89.     That we know of, Lund is depicted in the photos in Exhibit "O" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Lund was either an employee working at La Rumba, that she endorsed La Rumba, or that she was

otherwise associated or affiliated with La Rumba.

90.    Lund has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

91.    Plaintiff Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September, 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Leigh was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Leigh has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

92.    That we know of, Burkhardt is depicted in the photos in Exhibit "P" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Burkhardt was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

93.    Burkhardt has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no

remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

94. Plaintiff Cañas is a Colombian born model now residing and working in the United States. Canas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Canas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Canas was chosen as the face of the Masters Golf Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Canas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Canas has over 545 thousand Instagram followers, over 10.5 thousand followers on Twitter, and over nine thousand Facebook likes.

95. That we know of, Cañas is depicted in the photos in Exhibit "Q" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Cañas was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

96. Cañas has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

- 20 -

97. Plaintiff Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 1 million Social Media Followers.

98. That we know of, Sugden is depicted in the photos in Exhibit "R" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Sugden was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

99. Sugden has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

100. Plaintiff Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Besame Lingerie. She currently has over 141 thousand Instagram followers and over 77.6 thousand Twitter followers.

101.    That we know of, Valencia is depicted in the photos in Exhibit "S" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Valencia was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

102.    Valencia has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

103.    Plaintiff Toth is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

104.    That we know of, Toth is depicted in the photos in Exhibit "T" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Toth was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

105.    Toth has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

- 22 -

106.    Plaintiff Richards is an American model.  She is the Playboy Playmate for March 2007.  Prior to becoming a Playmate, Richards modeled for the Shirley of Hollywood lingerie catalog for five years. A native of Louisiana, Richards graduated from Southeastern Louisiana University with a degree in criminal justice in 2005. Richards's calendar appearances include Car Sound & Performance, Beach Babes, Hawaiian Tropic Girls of South Beach, Molson, and Chica Rica Bikini Company.  Her magazine appearances include Playboy, Maxim, Lovers Land, Hot Spot Plus, Sport Truck, Car Sound & Performance, Low Rider Euro, and Super Street.

107.    That we know of, Richards is depicted in the photos in Exhibit "U" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Richards was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

108.    Richards has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

109.    Plaintiff Guerra is a Cuban model currently living in the United States. Her first national exposure came when she appeared in a lingerie spread for *FHM* in December of 2002 and became "*FHM*'s "Model of the Year" in 2004. Since then, Guerra has been featured in many magazines, including *DUB, Smooth, Escape*, and *Open Your Eyes*. Guerra has made multiple appearances on several Spanish language television programs such as El Gordo y la Flaca (The Fat Guy and The Skinny Girl). She has also became a staple in music videos, appearing in "Shake Ya Tailfeather" performed by Nelly, P. Diddy, and Murphy Lee, from the Bad Boys II soundtrack, 2003, "The New Workout Plan" performed by Kanye West, 2004, and in "Obsession (No Es

Amor)" performed by Frankie J ft. Baby Bash, 2005, among others. In addition, Guerra has appeared in a commercial for Burger King's Tender Crisp Bacon Cheddar Ranch, a number of sketches on The Chappelle's Show, and the film, "National Lampoon's Dorm Daze 2." She lent her voice to the video game, "Scarface: The World Is Yours." In 2005, Guerra was voted Number 26 in *FHM*'s "Top 100 Sexiest Females" and has been named the winner of the magazine's "Best Butt Award". She also produced her own swimsuit calendars and accompanying "behind the scenes" DVDs and a 2006 DVD titled, "Vida Guerra: Exposed." She continues to be extremely in demand as a spokeswoman for fitness and fitness equipment, television shows, and movies. Guerra enjoys over 2,443,580 followers across Facebook, Instagram, and Twitter.

110.     That we know of, Guerra is depicted in the photos in Exhibit "V" to promote La Rumba on its Facebook page. This Image was intentionally altered to make it appear that Guerra was either an employee working at La Rumba, that she endorsed La Rumba, or that she was otherwise associated or affiliated with La Rumba.

111.     Guerra has never been employed at La Rumba, has never been hired to endorse La Rumba, has never been otherwise associated or affiliated with La Rumba, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

112.     Defendants operate La Rumba, where they engage in the business of selling alcohol and food in a sexually charged atmosphere.

113.     In furtherance of its promotion their promotion of La Rumba, Defendants own, operate, and control La Rumba's social media accounts, including its Facebook, Twitter, and Instagram accounts.

- 24 -

114. Defendants used La Rumba's Facebook, Twitter, and Instagram accounts to promote Disco Rodeo, and to attract patrons.

115. Defendants did this for their own commercial and financial benefit.

116. Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at La Rumba, endorsed La Rumba, or was otherwise associated or affiliated with La Rumba.

117. Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed La Rumba to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

118. Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by La Rumba, and at no point have any of the Plaintiffs ever endorsed La Rumba, or otherwise been affiliated or associated with La Rumba.

119. All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

120. Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

121. Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

122. It is common knowledge in the modeling industry that the hiring of a model for a

- 25 -

commercial purpose involves a particularized methodology and process.

123.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

124.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

125.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed La Rumba.

126.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

127.     In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with La Rumba.

128.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

129.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

130. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including La Rumba's website, Twitter, Facebook, or Instagram accounts.

131. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

132. Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

133. Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

**FIRST CAUSE OF ACTION**
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

134. The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with The Club, nor had they agreed to appear in La Rumba' advertisements.

135. Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

136. Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended La Rumba.

137. Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

138. Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed La Rumba, Defendants nevertheless used Plaintiffs' Images to mislead potential customers as to Plaintiffs' employment at or affiliation with La Rumba.

- 27 -

139. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with La Rumba.

140. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with La Rumba, and the goods and services provided by La Rumba.

141. Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

<u>**SECOND CAUSE OF ACTION**</u>
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)**

142. Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with La Rumba, or worked at, sponsored, or approved of La Rumba goods, services, or commercial activities.

143. This was done to promote and attract clientele to La Rumba, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

144. Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with La Rumba, nor worked at, sponsored, or approved of La Rumba' goods, services or commercial activities, Defendant nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with La Rumba.

145. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at La Rumba.

146. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of La Rumba and the goods and services provided by La Rumba.

147.    Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Common Law Right of Privacy - Misappropriation)**

148.    Defendants have appropriated each Plaintiffs' likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

149.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on La Rumba' website or related social media accounts as part of Defendants' advertising campaign.

150.    La Rumba' website and social media accounts were designed to advertise and attract business to La Rumba and generate revenue for Defendants.

151.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their Image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

152.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

153.    Plaintiffs' are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

154.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract

- 29 -

clientele and generate business for La Rumba.

155.    At no point did any Defendants ever seek or receive permission or consent to use any Plaintiffs' Image for any purpose.

156.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

157.    At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

158.    Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

159.    Plaintiffs have been damaged in amounts to be proved at trial.

## FOURTH CAUSE OF ACTION
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.*)**

160.    Defendants operated La Rumba's website and social media accounts in order to promote La Rumba, to attract clientele thereto, and to thereby generate revenue for Defendant.

161.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

162.    Defendants published Plaintiffs' Images on La Rumba's website and social media accounts to create the false impression that Plaintiffs were either employees working at La Rumba, endorsed La Rumba, or were otherwise affiliated, associated, or connected with La Rumba.

163.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the

- 30 -

public as to Plaintiffs' employment at and/or affiliation with La Rumba.

164.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

165.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

166.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

167.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina and caused injury to the Plaintiffs as complained of herein.

168.    Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

169.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are employees at La Rumba.

170.    Defendants' advertising practices cause substantial injury to consumers and the

Plaintiffs by creating the false impression that Plaintiffs are employees at, endorse, or are otherwise affiliated with La Rumba.

171.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

172.    As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

173.    As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

174.    Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

175.    Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1.

## FIFTH CAUSE OF ACTION
### (Defamation)

176.    As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote La Rumba to the general public and potential clientele.

177.    Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by La Rumba, that they endorsed La Rumba, or that they had some affiliation with La Rumba.

178.    None of these representations were true, and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

179.    In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at La Rumba or

- 32 -

endorsed La Rumba.

180.     Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by La Rumba, had no affiliation with La Rumba, had not consented to the use of their Images, and had not been compensated for the use of their Images.

181.     In the alternative, Defendants published the Images of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because the Defendants they knew that Plaintiffs were not employed by La Rumba, had no affiliation with La Rumba, had not consented to the use of their Images, and had not been compensated for the use of their Images.

182.     Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

183.     Defendants' publication of Plaintiffs' Images constitutes defamation per se under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

184.     Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

185.     This is because any company or brand that sought to hire any of the Plaintiffs as a

- 33 -

company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

186. Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

187. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

188. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

189. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

190. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

191. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

- 34 -

192. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

193. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

194. Defendants' breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

195. Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

196. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Conversion)

197. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

198. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

199. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and

publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**

200.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote La Rumba to the general public and potential clientele.

201.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at Disco Rodeo or endorsed La Rumba.

202.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

203.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

204.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to La Rumba.

205.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

206.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Quantum Meruit)**

207.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

208.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

- 36 -

209. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at La Rumba, endorse La Rumba, or are otherwise affiliated with La Rumba, Defendants have not compensated Plaintiffs.

210. Plaintiffs are therefore entitled to reasonable compensation for La Rumba' unauthorized use of their Images.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury.

## <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through eighth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117

(f) For such other and further relief as the Court may deem just and proper.


## SIGNATURE PAGE FOLLOWS

- 37 -

Respectfully submitted this 7th day of November, 2023.

/s/ John V. Golaszewski
JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646.872.3178
F: 855.220.9626
*Attorneys for Plaintiff*
*Pro Hac Vice Application Forthcoming*

/s/ Matthew R. Gambale
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
1100 Wake Forest Road, Suite 205
Raleigh, North Carolina 27604
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Attorneys for Plaintiff*